1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARCELINO CLEMENTE,                    Case No.  2:19-cv-00789-MCE-JDP (PC)

12                  Plaintiff,              FINDINGS AND RECOMMENDATIONS
                                            THAT DEFENDANT'S MOTION FOR
13           v.                             SUMMARY JUDGMENT BE DENIED

14   STINSON,                               ECF No. 21

15                  Defendant.              OBJECTIONS DUE WITHIN 14 DAYS

16

17           Plaintiff Marcelino Clemente, a state prisoner proceeding without counsel under 42 U.S.C.

18   § 1983, alleges that defendant Stinson, a correctional officer, threatened him and filed a false

19   report against him in retaliation for his filing of grievances and lawsuits.  Defendant has filed a

20   motion for summary judgment, arguing primarily that the report—a California Department of

21   Rehabilitation and Corrections ("CDCR") 128-B chrono—is informational rather than

22   disciplinary, and that it therefore does not implicate the First Amendment.  I recommend that

23   defendant's motion be denied.

24                                   **Background**

25           Plaintiff is a seventy-year-old prisoner at Mule Creek State Prison ("MCSP") who, due to

26   medical conditions that have accreted in recent years—a herniated disk, deterioration in his

27   cervical spine, surgery for prostate tumors, and a pair of hernias—has prescriptions for daily pain

28
                                            1

medication, a neck brace, a cane, a green "mobility-impaired" vest, lower tier (floor) status, lower bunk status, and limits on his use of stairs.  ECF No. 1 at 3; *see also* ECF No. 21-4 at 6-14.  In 2017, plaintiff filed an excessive force lawsuit against several prison officials not named in this action.  *See* ECF No. 23 at 18 (citing *Clemente v. Beasly, et al*., No. 2:17-CV-00948).  He alleges that, because of that lawsuit and several grievances, defendant Stinson engaged in a "campaign of harassment and retaliation" against him that included a threat to make his life miserable and an allegedly false chrono about his need for medical accommodations.  ECF No. 1 at 4.

The alleged campaign began in February 2018, when defendant authored a 128-B chrono accusing plaintiff of "manipulating medical staff in an effort to accommodate his self-proclaimed mobility and single-cell status."[1]  ECF No. 23 at 35; *see also* ECF No. 1 at 4-6.  The chrono alleged instances in which plaintiff had walked without his cane or neck brace, used stairs, carried water and laundry, and engaged in other activities in a manner indicating, according to defendant, "that [plaintiff] can highly function without the use of his medical appliances."  ECF No. 23 at 27-29, 35-37.  At some point before April 2018, plaintiff submitted a request for single-cell status, claiming that his age and medical problems left him vulnerable to attacks from cellmates—an issue he had encountered at least once before.  *Id*. at 27.  In April, the classification committee denied his request, and, in June, he received a second-level response to his appeal that justified the denial in part by referencing defendant's chrono: "a CDCR 128-B was discovered outlining the appellant's attempt at manipulating medical staff."  *Id*. at 29.  Shortly after receiving the second-level response, plaintiff asked defendant why he was "documenting false allegations," allegedly prompting defendant to respond, "since you like to file 602's and lawsuits, I'm going to make your stay here in A-facility Building 5 as miserable and uncomfortable as possible."  ECF

---

[1] An excerpted page of the California Department of Corrections and Rehabilitation Operations Manual lists "CDC Form 128-B, General Chrono" as one of at least ten forms used to report or document matters relating to inmates, such as "CDC Form 115, Rule Violation Report" and "CDC Form 128-C, Medical/Psychiatric/Dental/Chrono."  ECF No. 21-4 at 81.  The Manual explains that a 128-B form "shall be used by staff when the subject matter to be reported involves matters of classification, parole, or social service."  *Id*.  It then provides a list of possible uses, such as "to report such information as the inmate's relationships with fellow inmates, behavior, personal cleanliness, general attitude, and personality," and "when an adverse classification may occur or a major program change is anticipated."  *Id*.

No. 1 at 6.[2]  Plaintiff claims that thereafter he suffered severe depression and anxiety at the prospect of further retaliation.  *Id.*

Pointing to plaintiff's deposition, defendant claims that the chrono was undisputedly accurate: "[plaintiff] acknowledges that he can walk to areas within the housing unit without the use of his cane, including up and down stairs"; "[p]laintiff also concedes that he frequently did not wear his neck brace or use his cane while walking in February 2018."  ECF No. 21-2 at 3.  Defendant notes that the chrono included several photographs of plaintiff walking without his cane and carrying a laundry bucket.  *Id.*  Plaintiff contends that "defendant's account is not a true and accurate account of the events during [that] time," explaining that he "rarely walked around without his cane."  ECF No. 23 at 2.  In plaintiff's deposition, he acknowledged that there had been instances in which he had moved about without his cane or neck brace: "I'm not [an] invalid.  I'm not on crutches.  I'm able to function at a certain level."  ECF No. 21-4 at 15.  But he maintained that defendant's description was exaggerated and that the attached photographs had been taken selectively.  *Id*. at 15-22.  He added that, other than the vest, his accommodations were generally permissive, rather than mandatory.  *Id*. at 10-11.  He also stated that he was instructed to use the cane on an as-needed basis and to walk without it whenever possible to avoid becoming over-dependent on it.  *Id*.

In addition to defendant's threat, plaintiff claims that two other statements show both defendant's retaliatory motive and his knowledge of plaintiff's protected conduct.  ECF No. 23 at 3-7.  Plaintiff first recounts an episode that occurred in approximately late January 2018 at an outpatient mental health program: when plaintiff took the podium, an officer named Gossett told him, "you better not mess up our program[,] you know what happen (sic) to you last time," at which point defendant Stinson stated, "I know how to deal with inmates like you."  *Id*. at 7.

---

[2] Plaintiff has filed sworn declarations from three other inmates who corroborate this conversation, though with slight variations in wording.  *See, e.g.*, ECF No. 23 at 24 (declaration of C. Juarez) (attesting that defendant said to plaintiff, in an agitated manner, "since you like to file 602's and complaints, I am going to make you as miserable as I possibly can"); *id*. at 25 (declaration of X. J'Weial) (adding that, after plaintiff responded by threatening to file a complaint, defendant stated "go ahead you snibbling (sic) bitch"); *see also id*. at 23 (declaration of E. Joy) (similar).

1    Plaintiff claims that Gossett was "referring to the harassment and retaliation" that had led plaintiff

2    to file grievances and his 2017 lawsuit against Gossett and other officers.  *Id*. at 7, 14.  On another

3    occasion, after defendant searched his cell and confiscated a hot pot, defendant allegedly

4    dismissed plaintiff's objections by saying, "file a 602 like [you] always do."  *Id.* at 7.

5            Defendant does not expressly deny these statements but attests that he did not author the

6    chrono out of any retaliatory motive and that he "was not aware of with (sic) any of Clemente's

7    other lawsuits or complaints . . . at the time [he] authored the 128-B chrono."  ECF No. 21-5 at 4.

8    Defendant adds that he had no "power or control over the decision to issue or rescind medical

9    assistive devices or to grant or deny requests for reasonable accommodations," and that "it was

10   [his] job responsibility to document [his] observations."  *Id*.  Plaintiff contends that "defendant

11   Stinson was well aware that the language in the 128-B chrono that he authored would [have] and

12   had a negative and significant impact . . . in denying plaintiff's request for accommodation,"

13   adding that defendant knew that "the term 'manipulator' . . . has a particular meaning in the

14   prison context."  ECF No. 23 at 4.

15                              **Legal Standard**

16           A motion for summary judgment will be granted only when "the pleadings, depositions,

17   answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

18   there is no genuine issue as to any material fact and that the moving party is entitled to a

19   judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R.

20   Civ. P. 56.  The moving party bears the burden of establishing that there is no genuine issue of

21   material fact.  *See Celotex*, 477 U.S. at 322-23.  If the moving party meets that burden by

22   "presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial,

23   [Federal Rule of Civil Procedure 56(e)(2)] shifts to [the nonmoving party] the burden of

24   presenting specific facts showing that such contradiction is possible."  *British Airways Bd. v.*

25   *Boeing Co*., 585 F.2d 946, 950-52 (9th Cir. 1978).

26           Each party's position must be supported by (1) citations to particular portions of materials

27   in the record, including but not limited to depositions, documents, declarations, or discovery; or

28

                                        4

(2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position.  *See* Fed. R. Civ. P. 56(c)(1).  The court can consider other materials in the record not cited by the parties, but it is not required to do so.  *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence."  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**Discussion**

**A.  First Amendment Retaliation**

"It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances . . . [, and r]etaliation against prisoners for their exercise of this right is itself a constitutional violation."  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted).  A claim of retaliation under the First Amendment has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

As an initial matter, plaintiff's evidence is sufficient to create a genuine factual dispute as to the second and third elements: protected conduct and causation.  The record at least reflects a

genuine issue of material fact as to whether plaintiff's earlier grievances and lawsuit—both of which are protected conduct under the First Amendment—were a "substantial or motivating factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1266, 1271 (holding that defendant's warning "to be careful what you write, req[u]est on this form," in response to a grievance filing, met the causation and protected conduct elements). Plaintiff includes sworn declarations from four inmates, including himself, that defendant said to him, in substance, "since you like to file 602's and lawsuits, I'm going to make your stay here in A-facility Building 5 as miserable and uncomfortable as possible." ECF No. 1 at 6; *see also supra*, note 2. In response, defendant offers only conclusory statements that he did not act in retaliation for plaintiff's protected conduct.

Defendant argues primarily that plaintiff has failed to demonstrate sufficiently that he suffered an adverse action, *see* ECF Nos. 21 & 24, meaning a harm or threat of harm that would deter a person of ordinary firmness from protected activities. *See Rhodes*, 408 F.3d at 568-69.[3] Courts have held that a person of ordinary firmness would be so deterred by a false charge in a rules violation report, *Hines v. Gomez*, 108 F.3d 265, 169 (9th Cir. 1997), by being transferred or double-celled, *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995), or by "the mere *threat* of . . . discipline or transfer," *Brodheim*, 584 F.3d at 1270 (emphasis in original). If a threat is alleged, the plaintiff need not show an "explicit, specific threat"; it is enough to produce statements "that a reasonable factfinder could . . . interpret as intimating that some form of punishment or adverse regulatory action would follow." *Id.* (holding that the statement, "I'd also like to warn you to be careful what you write, req[u]est on this form," was an adverse action).

Citing several district court opinions, defendant argues that, as a matter of law, a 128-B chrono cannot be an adverse action because it is informational, rather than disciplinary. *See* ECF No. 21 at 5-7 (citing, *e.g.*, *Jenkins v. Caplan*, No. C 02-5603 RMW PR, 2010 WL 3742659, at *2

---

[3] Because adverse action is defined in terms of whether it satisfies the fourth element, it is unnecessary to conduct separate analyses of both elements. *See Rhodes*, 408 F.3d at 568, n.11 (explaining that "since harm that is more than minimal will almost always have a chilling effect[, a]lleging harm *and* alleging the chilling effect would seem under the circumstances to be no more than a nicety") (italics in original).

(N.D. Cal. Sept. 16, 2010) (stating that because a 128-B chrono is an "informational custodial counseling memoranda that . . . has no disciplinary consequences to the inmate," it does not ordinarily rise to the level of an adverse action)).[4]  Although the cited cases may suggest a general rule that a 128-B chrono "does not, by itself, constitute an adverse action for purposes of retaliation," *Davis v. Molina*, No. 1:14-cv-1554-LJO-BAM, 2018 WL 1157484, at *4-5 (E.D. Cal. Mar. 5, 2018), they do not decide this case for at least two reasons.

First, although in some cases a chrono might be merely informational, here it caused concrete harm: denial of plaintiff's application for single-cell status.[5]  An otherwise harmless act can constitute an adverse action if the plaintiff shows that it caused, or could foreseeably cause, concrete harm.  *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that calling the plaintiff a "snitch" was an adverse action because it foreseeably subjected him to attacks by other inmates).  Defendant's cases are consistent with this principle.[6]  In *Masterson*, for example, the court held that the plaintiff "presented no evidence that [the allegedly false] chronos were tied to any adverse action."  2017 WL 928710 at *12.  There, the plaintiff had argued that an officer was attempting to have him placed in administrative segregation by using the term "overfamiliar"—a term that the plaintiff claimed had a "particular meaning in the prison context that would require his placement in Ad-Seg."  *Id.*  The court found this argument to be

---

[4] *See also Masterson v. Killen*, No. 1:11-cv-01179, 2017 WL 928710 at *11-12 (E.D. Cal. 2017); *Davis v. Molina*, No. 1:14-cv-1554-LJO-BAM, 2018 WL 1157484, at *4-5 (E.D. Cal. Mar. 5, 2018); *Williams v. Woddford*, No. 1:06-cv-01535-DLB (PC), 2009 WL 3823916, at *3 (E.D. Cal. Nov. 13, 2009); *Samano v. Copeland*, 1:07-00394-OWW-GSA, 2008 WL 2168884, *2 (E.D. Cal. May 23, 2008); *Jenkins v. Caplan*, No. C 02–5603 RMW PR, 2010 WL 3742659, at *2 (N.D. Cal. Sept. 16, 2010); *Reed v. Paramo*, No. 18-cv-361 JLS (LL), 2019 WL 398339, at *8 (S.D. Cal. Jan. 31, 2019).

[5] Defendant disputes the claim that the chrono was false or inaccurate.  For reasons discussed *infra*, I find that there is a genuine dispute of material fact as to whether the chrono was accurate.

[6] In the cases identified by defendant, the plaintiffs either identified a purely speculative future harm resulting from the 128-B, claimed without evidence that a subsequent harm was the result of the earlier chrono, or failed to identify any subsequent harm whatsoever.  *See Jenkins*, 2010 WL 3742659, at *2 (speculation about future adverse parole decision not adverse action); *Davis*, 2018 WL 1157484, at *4-5 (plaintiff's claim that 128-B contributed to adverse parole decision was refuted by evidence that the parole board did not consider the 128-B in reaching their decision); *Samano*, 2008 WL 2168884, *2 (no concrete harm identified); *Williams*, 2009 WL 3823916, at *3 (no concrete harm identified).

too speculative, both because the plaintiff was ultimately not placed in administrative segregation and because he provided no evidence, beyond his own claim that it was "common sense," that the term "overfamiliar" would lead to placement in administrative segregation.  *Id.*; *see also Garcia v. Blahnik*, No. 14-CV-875-LAB-BGS, 2017 WL 1226863, at *13 (S.D. Cal. Feb. 3, 2017) (holding that because "[p]laintiff has not stated any facts to suggest that these chronos did, in fact, negatively impact his housing . . . there is no genuine issue of material fact that [the] 128-B was not an adverse action").

Here, in contrast, there is evidence that the chrono had a direct and harmful consequence: plaintiff was denied single-cell status in part because, according to the second-level review, "a CDCR 128-B was discovered outlining the appellant's attempt at manipulating medical staff." ECF No. 23 at 29.  Indeed, this outcome appears to have been intended by defendant, since he concluded the chrono by stating that "[t]he purpose of this CDCR-128b is to divulge information about CLEMENTE manipulating medical staff in an effort to accommodate his self-proclaimed mobility and single cell status."  ECF No. 21-5 at 10.  And it is well-established that cell and bed assignments can implicate the First Amendment.  *See Pratt*, 65 F.3d at 804 (holding that transferring a plaintiff from a single cell to a double cell was an adverse action); *Dragasits v. Jin Yu*, No. 16-CV-01998-BAS-JLB, 2019 WL 192759, at *7 (S.D. Cal. Jan. 15, 2019) (holding that a doctor's decision not to renew a plaintiff's lower bunk chrono was an adverse action "because [his] decision affected Plaintiff's housing accommodations").

Second, even assuming that the chrono is not an independent adverse action, plaintiff has introduced evidence beyond that of the chrono—namely, evidence that defendant threatened to make him "as miserable and uncomfortable as possible."  ECF No. 1 at 6.  A reasonable factfinder could "interpret [defendant's statement] as intimating that some form of punishment or adverse regulatory action would follow."  *Brodheim*, 584 F.3d at 1270 (internal quotation marks omitted).  This is especially so when the threat is considered in conjunction with the chrono, which a reasonable factfinder could interpret as evidence that defendant's threat was sincere.  *See id.* at 1266, 1270-71 (explaining that a memo recommending that the plaintiff be transferred was

1    "circumstantial evidence" that an earlier warning "to be careful what you write" would be

2    interpreted as a threat of discipline or transfer, even though the memo was written after the

3    commencement of the plaintiff's suit).  The record therefore reflects a genuine dispute of material

4    fact as to whether plaintiff suffered an adverse action that would chill the actions of a person of

5    ordinary firmness.

6           Finally, plaintiff has raised a genuine issue of material fact as to whether defendant's

7    retaliatory actions "did not advance legitimate goals of the correctional institution or [were] not

8    tailored narrowly enough to achieve such goals." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.

9    1985).  Defendant does not offer—and probably could not reasonably offer—a legitimate

10   penological goal to justify his threat to make plaintiff miserable.  *See Brodheim*, 584 F.3d at 1274

11   (Bea, J., concurring) (explaining that the majority's discussion of other legitimate penological

12   interests was superfluous because "there is no legitimate penological interest in warning prisoners

13   not to file grievances").  As for his completion of the chrono, defendant does argue that

14   accurately documenting plaintiff's behavior advanced the legitimate goal of appropriately

15   allocating limited medical accommodations.  ECF No. 21-2 at 8.  Although this may be a

16   legitimate correctional goal in the abstract, when a defendant prison official rebuts a retaliation

17   claim "by articulating a general justification for a neutral process," a plaintiff will prevail if he

18   raises a genuine dispute of fact that the defendant "abused the . . . procedure as a cover or ruse to

19   silence and punish." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).  Plaintiff contends that

20   the chrono selectively documented rare instances of movement without his cane or neck brace to

21   suggest, falsely, that he was seeking to "manipulate medical staff."  ECF No. 23 at 6-10.  Plaintiff

22   adds that his medical accommodations permitted—but did not require—him to use a cane and

23   neck brace on an as-needed basis.  On this record, a reasonable factfinder could find that

24   defendant omitted salient information and reached unsubstantiated conclusions and, in so doing,

25   abused a neutral process for retaliatory ends.

26          **B.  Qualified Immunity**

27          Defendant argues in the alternative that he is entitled to qualified immunity.  To assess

28

9

1   whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in

2   the light most favorable to the non-moving party, show that the official's conduct violated a

3   constitutional right, and (2) whether the law at the time of the challenged conduct clearly

4   established that the conduct was unlawful." *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir.

5   2018).

6           Having established that plaintiff has raised a genuine issue of material fact as to whether

7   the first question might be answered in his favor, I turn to whether the law was clearly established

8   at the time.  "To be clearly established, a legal principle must have a sufficiently clear foundation

9   in then-existing precedent . . . , which means it is dictated by controlling authority or a robust

10  consensus of cases of persuasive authority." *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018)

11  (citations omitted).  It was clearly established in 2018 that retaliating against a prisoner for filing

12  lawsuits or grievances violates the First Amendment, *Rhodes*, 408 F.3d at 568, and that an

13  adverse action can be constituted by threats of discipline, false charges, and adverse classification

14  decisions.  *See Brodheim*, 584 F.3d at 1269-70 (discussed, *supra*, Part A); *see also Klein v.

15  Williams*, 714 F. App'x 631, 635-36 n.2 (holding that an officer violated the First Amendment by

16  threatening to fire plaintiff from a prison job in retaliation for filing a grievance).  Viewing the

17  evidence in the light most favorable to plaintiff, the record indicates that, in retaliation for

18  plaintiff's prior grievance and lawsuit filings, defendant issued a verbal threat to make plaintiff's

19  life "as miserable as possible" and filed a substantially-false 128-B chrono that was designed to

20  cause—and did cause—an adverse housing classification.  Under then-existing precedent, a

21  reasonable officer would have understood that this conduct violated the First Amendment.

22          Defendant argues that "[t]here is no clearly established First Amendment right to a

23  truthful 128-B chrono."  ECF No. 21-2 at 10.  But this argument frames the right too narrowly.

24  *See Hines v. Youseff*, 914 F.3d 1218, 1230 (9th Cir. 2019).  The specific form used by defendant

25  to retaliate is of little constitutional import; what matters is that binding precedent clearly

26  established that a person of ordinary firmness would be chilled from further protected activity by

27  direct threats of retaliation and administrative actions that adversely affect housing

28

10

accommodations.  *Cf. Entler v. Gregoire*, 872 F.3d 1031, 1041 (9th Cir. 2017) (overturning a grant of qualified immunity to defendants who retaliated against a prisoner who only threatened to sue, explaining that "the constitutional right to redress of grievances does not hinge on the label the prison places on a particular complaint") (internal marks omitted).  I therefore find that defendant is not entitled to qualified immunity.

Based on the foregoing, it is RECOMMENDED that defendant's motion for summary judgment, ECF No. 21, be denied.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties.  That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.


Dated:   February 25, 2022                                        _____
                                                                 JEREMY D. PETERSON
                                                                 UNITED STATES MAGISTRATE JUDGE